**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Alejandro Bermudez, | No. CV-14-02364-PHX-NVW |
| Plaintiff, | **ORDER** |
| v. | |
| Carolyn W. Colvin, Acting Commissioner of Social Security, | |
| Defendant. | |

Plaintiff Alejandro Bermudez seeks review under 42 U.S.C. § 405(g) of the final decision of the Commissioner of Social Security ("the Commissioner"), which denied him disability insurance benefits under sections 216(i) and 223(d) of the Social Security Act.  Because the decision of the Administrative Law Judge ("ALJ") is supported by substantial evidence and is not based on legal error, the Commissioner's decision will be affirmed.

I.    **BACKGROUND**

  A.    **Factual Background**

Plaintiff lives in Surprise, Arizona.  He was born in February 1961 and was 48 years old on the alleged disability onset date, November 1, 2009.  He previously worked as a construction superintendent, has at least a high school education, and speaks English. He injured his back when he was 20 years old, but he does not recall any incident causing his current lower back pain.  Before November 1, 2009, he worked building walls for

houses and had to leave early most days because of back pain.  After a month or so, he was told there was no work and he was laid off.  He is obese and has been diagnosed with degenerative disc disease of the lumbar spine.  He has received treatment at the Arizona Neurological Institute and the Banner Boswell Medical Center in Sun City, Arizona.

### B.    Procedural History

On August 4, 2011, Plaintiff applied for disability insurance benefits and supplemental security income, alleging disability beginning November 1, 2009.  On April 15, 2013, he appeared with his attorney and testified at a hearing in Phoenix, Arizona, before the ALJ.  A vocational expert also testified.  During the hearing, Plaintiff's counsel requested that a post-hearing orthopedic consultative examination be performed. Subsequently, the requested examination was performed by Jeffrey Levison, M.D.  Dr. Levison's evaluation and medical source statement were provided to Plaintiff and his counsel for an opportunity to respond, however, no response was received by the ALJ.

On July 11, 2013, the ALJ issued a decision that Plaintiff was not disabled within the meaning of the Social Security Act.  The Appeals Council denied Plaintiff's request for review of the hearing decision, making the ALJ's decision the Commissioner's final decision.  On October 24, 2014, Plaintiff sought review by this Court.

## II.    STANDARD OF REVIEW

The district court reviews only those issues raised by the party challenging the ALJ's decision.  *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001).  The court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error.  *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).  Substantial evidence is more than a scintilla, less than a preponderance, and relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole.  *Id.*  As a general rule, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld."  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted); *accord Molina v. Astrue*,

674 F.3d 1104, 1111 (9th Cir. 2012) ("Even when the evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record.").

Harmless error principles apply in the Social Security Act context. *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). An error is harmless if there remains substantial evidence supporting the ALJ's decision and the error does not affect the ultimate nondisability determination. *Id.* The claimant usually bears the burden of showing that an error is harmful. *Id.* at 1111.

## III. FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To determine whether a claimant is disabled for purposes of the Social Security Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

At the first step, the ALJ determines whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. § 404.1520(a)(4)(ii). If not, the claimant is not disabled and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, the ALJ proceeds to step four. At step four, the ALJ assesses the claimant's residual functional capacity and determines whether the claimant is still capable of performing past relevant work. § 404.1520(a)(4)(iv). If so, the claimant is not disabled and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where he determines whether the claimant can perform any other work based on the claimant's residual functional capacity, age, education, and work experience.

§ 404.1520(a)(4)(v).  If so, the claimant is not disabled.  *Id.*  If not, the claimant is disabled.  *Id.*

At step one, the ALJ found that Plaintiff meets the insured status requirements of the Social Security Act through March 31, 2014, and that he has not engaged in substantial gainful activity since November 1, 2009.  At step two, the ALJ found that Plaintiff has the following severe impairments:  obesity and degenerative disc disease of the lumbar spine.  At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.

At step four, the ALJ found that Plaintiff "has the residual functional capacity to perform the full range of medium work as defined in 20 CFR 404.1567(c)."  "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds."  20 C.F.R. § 404.1567(c).  If someone can do medium work, he can also do sedentary and light work.  *Id.*  The ALJ further found that Plaintiff is capable of performing past relevant work as a construction superintendent.  At step five, the ALJ alternatively concluded that, considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff can also perform.

## IV.   ANALYSIS

### A.   The ALJ Did Not Err in Giving Little Weight to the Medical Statement by Terrie Pasch.

Under 20 C.F.R. § 404.1513(a), only licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists are considered "acceptable medical sources."  *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).  "Other sources" are not entitled to the same deference as "acceptable medical sources."  *Id.*  The ALJ may discount testimony from "other sources" if the ALJ gives reasons germane to the witness for doing so.  *Id.*  Under 20 C.F.R. 404.1513(d), "other sources" include nurse practitioners and physicians'

assistants.   Information from "other sources" cannot establish the existence of a medically determinable impairment, but the information "may be based on special knowledge of the individual and may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function."  SSR 06-03p, 2006 WL 2329939.

Plaintiff contends the ALJ erred by affording "little weight" to the November 7, 2012 Medical Statement Regarding Spine Disorders for Social Security Disability Claim completed by Terrie Pasch, whom he refers to as his "treating nurse practitioner."  On the medical statement, however, she identifies herself as a physicians' assistant.  Moreover, despite the ALJ's reference to her as a "treating provider" and inconsistencies "with her own treatment records," neither the parties nor the ALJ cite to any treatment records or other evidence showing that Ms. Pasch ever treated Plaintiff.  The heading on the form represents it came from Freedom Disability, The Social Security Disability Experts, with a Connecticut address, and the record lacks any evidence that Plaintiff received treatment from Ms. Pasch or anyone in Connecticut.

Assuming Ms. Pasch actually treated Plaintiff, however, she is not an acceptable medical source, and the Medical Statement Regarding Spine Disorders for Social Security Disability Claim is not entitled to greater weight than opinions of acceptable medical sources as Plaintiff contends.  Ms. Pasch opined that Plaintiff can stand 15 minutes at one time and sit 15 minutes at one time.  She did not respond regarding the total amount of time he can stand in a workday or the total amount of time he can sit in a workday.  She opined that Plaintiff can lift 5 pounds on an occasional basis and 5 pounds on a frequent basis but can never bend or stoop.  She indicated that Plaintiff suffered from pain that is moderate, and objective signs of pain are tenderness to palpation and limitation of motion.  She further opined that Plaintiff will frequently need unscheduled interruptions of work routine to alleviate pain during the day and will probably frequently miss work due to exacerbations of pain.  The ALJ identified the following reasons for giving the Medical Statement little weight:   (1) the opinions regarding exertional

- 5 -

activities did not indicate how long Plaintiff can do these activities in an 8-hour day; (2) assessment of "moderate" pain is unhelpful because "moderate" is undefined; and (3) it is inconsistent with treatment records indicating the claimant's condition is stable and well-controlled. These reasons are germane to the Medical Statement and supported by substantial evidence.

Moreover, Plaintiff has not satisfied his burden to prove that this source has "special knowledge of the individual." He has not identified any evidence in the record showing any basis for the source's knowledge of Plaintiff's functional limitations.

### B.  The ALJ Did Not Err in Evaluating Plaintiff's Credibility.

In evaluating the credibility of a claimant's testimony regarding subjective pain or other symptoms, the ALJ is required to engage in a two-step analysis:  (1) determine whether the claimant presented objective medical evidence of an impairment that could reasonably be expected to produce some degree of the pain or other symptoms alleged; and, if so with no evidence of malingering, (2) reject the claimant's testimony about the severity of the symptoms only by giving specific, clear, and convincing reasons for the rejection. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

In making a credibility determination, an ALJ "may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the claimant's allegations." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009) (internal quotation marks and citation omitted).  But "an ALJ may weigh inconsistencies between the claimant's testimony and his or her conduct, daily activities, and work record, among other factors." *Id.*  The ALJ must make findings "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002); *accord Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008).

First, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms.  Second, the ALJ found Plaintiff's statements regarding the intensity, persistence, and limiting effects of the

symptoms not credible to the extent they are inconsistent with the ALJ's residual functional capacity assessment.

Plaintiff alleges that his disability began on November 1, 2009. On February 15, 2010, Plaintiff's prescription for Percocet was renewed for chronic back pain, and examination by a treating medical provider revealed "moderate lower lumbar tenderness without radiation." On April 9, 2010, Plaintiff's prescription for Percocet was refilled, and Plaintiff reported he had been having more back pain and had to use more medication recently. He also reported that he normally sleeps well. On June 29, 2010, Plaintiff reported he had had a significant increase in back pain since he helped someone unload concrete blocks five days before. He was prescribed Percocet and referred to a pain management specialist. On August 16, 2010, Plaintiff reported that Percocet generally gives him enough relief to carry on a somewhat normal life, and the nurse practitioner described his lower back pain as "normally well controlled by the Percocet." On September 17, 2010, Plaintiff was "encouraged to be as active as he can and also to consider the possibility of going to pain management for his back pain." On October 18, 2010, Plaintiff saw the nurse practitioner for a refill of Percocet, and she noted that "he feels that he is stable and doing well but certainly could not maintain a normal life without having the medication to ease his back pain." Plaintiff reported that he "mostly sleeps well if he has his pain medication."

On July 5, 2011, Dr. Jeranfel Hernandez changed Plaintiff's prescription from Percocet to Vicodin, noted that Plaintiff had missed his appointment with a pain management specialist, and advised Plaintiff to keep the appointment rescheduled for August 2011. On August 10, 2011, Plaintiff was seen by Dr. Lawrence Kutz of the Arizona Neurological Institute for evaluation of back pain. On September 6, 2011, and again on October 4, 2011, Dr. Kutz performed a bilateral lumbar selective nerve root block at L5 at the Banner Boswell Medical Center.

On October 10, 2011, Plaintiff completed an Exertional Daily Activities Questionnaire in which he stated that he is not able to do very much because his lower

back pain prevents him from bending over, and he cannot run, walk for more than five minutes, lift more than five pounds, or get a good night's sleep.  He said his lower back pain also makes his legs hurt.  He reported that on an average day he watches television, goes outside for a while, and eats.  He also reported that he does his own grocery shopping weekly and can drive a car for approximately 20 minutes before getting lower back pressure.  He said that he does not do any activities outside of his home and he does no household chores except microwave cooking.  He reported that he must lie down for about 30 minutes every two or three hours.  The only medication he identified was one "acetaminophen 5-500" tablet two times per day, which likely refers to a combination of 5 mg hydrocodone and 500 mg acetaminophen, a generic form of Vicodin.

On November 17, 2011, Plaintiff rated his chronic low back pain at 7/10 and reported to Dr. Kutz that his leg symptoms had resolved after the epidurals.  Dr. Kutz noted that Plaintiff walked without difficulty, had no apparent distress, and had not attended physical therapy.  Dr. Kutz encouraged Plaintiff to do home exercises.  On December 13, 2011, Dr. Kutz performed bilateral lumbar facet joint nerve ablations at L4-5 and L5-S1.

On February 9, 2012, Plaintiff reported to psychologist Carl Mansfield, Ph.D., that he does light cooking, such as preparing sandwiches and frozen foods, and is able to do lighter household chores, such as washing dishes and dusting.  He said that he does his own laundry and some raking and lawn mowing with short breaks.  He reported that his brother takes him grocery shopping once or twice a week, and he does not use an electric scooter in the store.  He also reported that he walks his dog for a block and tries to do it three times daily.  He said he watches television, reads magazines, sometimes listens to music, and enjoys sitting outside.  Plaintiff also said he performs self-care independently, but it is sometimes painful.

On April 18, 2012, Dr. Kutz's notes state that Plaintiff obtained moderate relief from the facet joint nerve ablation.  He experienced a significant increase in pain for approximately three days with "near complete relief" for three to four weeks and then a

gradual increase of pain over the next several months.  Physical examination revealed moderate tenderness of the lumbar spine.  Dr. Kutz recommended stretching exercises.  On August 17, 2012, Dr. Kutz performed a bilateral sacral selective nerve root block at S1.

On April 15, 2013, Plaintiff testified that pain medication reduces the severity of his pain about 30%.  He said that after he received injections, he could not walk for about three days, and then his pain would improve for about three weeks.  He also testified that his legs hurt all of the time, and he would be able to sit in an office chair for only 15 minutes before he would need to get up and walk for about five minutes before sitting down again.  He testified that leg and back pain prevents him from sleeping well at night so he takes a nap for an hour or two during the daytime.  He said he lives with his parents and does no household chores except occasionally washing a dish he has used.

The ALJ found Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms not entirely credible not only because they were not corroborated by objective medical evidence, such as X-rays and MRIs, but also because clinical findings, including physical examinations, documented only minimal abnormalities, and treatment records indicate pain medication and other treatments permitted Plaintiff to function somewhat normally.  The ALJ noted that although Plaintiff testified that he experiences side effects from his medications, treatment records did not show that he had reported side effects to his treatment providers.  The ALJ also found his delay in seeking pain management treatment and his failure to attend prescribed physical therapy indicate Plaintiff's pain was not as severe as he alleges.  Further, the ALJ said that Plaintiff's credibility was impugned by admissions that he was "let go" from his last job, received unemployment insurance benefits, looked for work after his last work ended in November 2009, exercised by walking two or three times per week, had helped a friend unload concrete blocks, and had helped a friend with "some work."  Thus, substantial evidence supports finding that the ALJ provided specific, clear, and convincing reasons for discrediting Plaintiff's subjective symptom testimony.

C.      **The ALJ Did Not Err in Her Examination of the Vocational Expert.**

"An ALJ may use the testimony of a vocational expert to determine whether the claimant can perform past relevant work."  *Ghanim v. Colvin*, 763 F.3d 1154, 1166 (9th Cir. 2014).  An ALJ may rely on a vocational expert's testimony that is based on a hypothetical that contains all of the limitations the ALJ found credible and supported by substantial evidence in the record.  *Id.*

Here, the ALJ posed a hypothetical with limitations based on the physical residual functional capacity assessment prepared by the state agency reviewing physician on reconsideration, Ernest Griffith, M.D.  The ALJ included three environmental limitations (*i.e.*, extreme cold, vibration, and hazards) as described by Dr. Griffith:  "Avoid concentrated exposure."  Dr. Griffith did not explain what he meant by "concentrated exposure," and it is not apparent how an individual could have "concentrated exposure" to extreme cold, vibrations, or hazards such as machinery or heights.  When the vocational expert questioned the meaning of "concentrated exposure," the ALJ tried to give the phrase some reasonable meaning and reframed the hypothetical to include "occasional exposure."  However, the ALJ must not have found the environmental limitations to be credible and supported by substantial evidence in the record because she did not include any in the residual functional capacity assessment.  Therefore, how the ALJ presented environmental limitations in the hypothetical posed to the vocational expert is immaterial.

D.      **"New" Evidence Regarding Consultative Examining Physician Jeffrey Levison, M.D., Does Not Warrant Remand.**

During the April 15, 2013 hearing, Plaintiff's counsel requested that a post-hearing orthopedic consultative examination be performed.  On May 8, 2013, Jeffrey Levison, M.D., examined Plaintiff and prepared a Medical Source Statement of Ability to Do Work-Related Activities (Physical).  Dr. Levison's evaluation and medical source statement were provided to Plaintiff and his counsel for an opportunity to respond, however, no response was received by the ALJ.  The ALJ afforded "more weight" to Dr.

Levison's opinion than to the opinions of the state agency reviewing consultants because he was able to personally examine Plaintiff and his examination was more current.

Dr. Levison reported that he reviewed medical records but did not see any objective diagnostic testing results regarding Plaintiff's alleged bulging/herniated discs.[1] He also reported that Plaintiff said he was "not taking any medications whatsoever." Upon examination, Dr. Levison noted Plaintiff had "moderate calluses over either hand." Dr. Levison reported "no palpation or percussion tenderness of the spine" and "full range of motion about the cervical, thoracic, and lumbar spine." Dr. Levison observed Plaintiff "bending at the waist applying and removing his shoes without difficulty or evidence of pain or limitations" and sitting "in a seated position bringing his knees up to his chest and then crossing his legs in order to tie his shoes" "without significant evidence of pain or limitation." Lumbrosacral spine X-rays were performed at the time of Dr. Levison's examination, which showed "very minor and minimal degenerative changes at L2 through L4," "very minor and mild anterior osteophyte formation at T12/L1," and normal disc heights throughout the thoracolumbar spine. Dr. Levison said that Plaintiff reported low back pain, but "is likely markedly exaggerating his condition and limitations." Dr. Levison opined that Plaintiff has no physical functional limitations except for lifting/carrying more than 50 pounds no more than occasionally.

Plaintiff contends that remand is necessary because "new" and "material" evidence gives rise to a "reasonable possibility" that the ALJ would not have given "more

---

[1] Plaintiff incorrectly contends Dr. Levison's failure to see objective diagnostic testing results in the records demonstrates that he did not sufficiently review the medical records. Plaintiff does not cite to any objective diagnostic testing results in the medical records and relies (without citation) only on Plaintiff's reports of pain to his doctors. Plaintiff also contends that Dr. Kutz referred to an MRI, which Dr. Kutz described as showing a "small L4/5 disc protrusion, spondylosis with mild spinal stenosis." Dr. Levison did not overlook the MRI because it was not in the record, and he ordered and reviewed the results of an X-ray performed the same day as his examination, which also showed only minor and minimal degenerative changes.

weight" to Dr. Levison's opinion if she had considered two prior licensing Advisory Letters.  Plaintiff has submitted to the Court a letter from the Arizona Medical Board dated April 6, 2012, stating that during a public meeting on April 4, 2012, the Board voted to issue Dr. Levison an "Advisory Letter for inadequate medical records and for prescribing testosterone refills without performing a physical examination."  It also states, "This matter does not rise to the level of discipline."  Plaintiff also submitted to the Court a letter from the Arizona Medical Board dated February 27, 2004, stating that "the Board voted to issue Dr. Levison an Advisory Letter for obtaining inadequate history of a patient in an urgent care setting."  It also states, "The violation is a technical violation that is not of sufficient merit to warrant disciplinary action."  Neither letter provides any basis for questioning Dr. Levison's competence in performing a physical examination or in understanding a radiologist's report of X-ray results.

Upon judicial review of a final decision of the Commissioner of Social Security, the court has the power to enter a judgment affirming, modifying, or reversing the decision, with or without remanding the cause for a rehearing, under sentence four of 42 U.S.C. § 405(g).  The court has discretion to reverse and remand either for an award of benefits or for further administrative proceedings only if the ALJ's decision is not supported by substantial evidence or suffers from legal error.  *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996).  The Court may not remand this case under sentence four of 42 U.S.C. § 405(g) because the ALJ's decision is supported by substantial evidence and is not based on legal error.

Under sentence six of 42 U.S.C. § 405(g), the court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding."  The two Advisory Letters are not new evidence because they existed before Dr. Levison examined Plaintiff and before the ALJ issued her decision.  Regardless of whether Plaintiff had good cause for not submitting the Advisory Letters to the ALJ in response to

Dr. Levison's opinion, the Advisory Letters are not material because they do not bear directly and substantially on the matter in dispute.  *See Luna v. Astrue*, 623 F.3d 1032, 1034 (9th Cir. 2010).  Therefore, this matter may not be remanded for the Commissioner to consider the two Advisory Letters.

IT IS THEREFORE ORDERED that the final decision of the Commissioner of Social Security is affirmed.  The Clerk shall enter judgment accordingly and shall terminate this case.

Dated this 29th day of April, 2015.

Neil V. Wake
United States District Judge